**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA,**

                Plaintiff,

v.                                **CASE NUMBER:**    2:25CR00085 PPS

**MICHAEL DECKINGA**,

                Defendant.

_____/

### DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Michael Deckinga, submits the following for the Court's consideration at the sentencing herein:

### I. The Sentencing Guidelines

The United States Probation Office has recommended, based on a total offense level of 37, and Criminal History Category I, that Mr. Deckinga's guideline sentencing range is 210 to 240 months. Neither party has objected to that calculation.

### II. Proposed Conditions of Supervision

The undersigned has reviewed the proposed conditions of supervision with Mr. Deckinga. The Defendant has no objections to the proposed conditions of supervision.

### III. Sentencing Factors under 18 U.S.C. § 3553(a) for the Court's Consideration

A.      <u>Family History</u>

Michael Deckinga is forty-two (42) years old. He was born in Sterling, Illinois. He was adopted by Sandra Deckinga and Derk Deckinga, Jr. Both of his parents were active in his upbringing. Mr. Deckinga had a good childhood.

Mr. Deckinga is married and has seven (7) minor children with his Wife, Kimberly Deckinga. She remains supportive of him. His incarceration will have a substantial impact on his children, as they depend on him for financial and emotional support.

He has a close relationship with his immediate family and his extended family. They remain supportive of him (Exhibit A, Sealed Exhibit A, and Exhibit B). Mr. Deckinga also has the support of many friends and his church community (Exhibit C and Exhibit D).

### B. Offense Conduct and Prior Criminal Justice Intervention

Mr. Deckinga has demonstrated clear and unequivocal acceptance of responsibility for his conduct related to this offense. When he was confronted by law enforcement, he acknowledged and admitted his criminal conduct.

Mr. Deckinga does not minimize the seriousness of his offense conduct. He recognizes that the distribution of child sexual abuse material (CSAM) causes real harm to real children. Mr. Deckinga realizes that his trading of CSAM with other offenders and engaging in sexually explicit chats with purported minors is unacceptable behavior that causes real harm.

There is no evidence that Mr. Deckinga engaged in any hand-on sexual contact with any actual minor. In fact, he passed a polygraph administered by the Indiana State Police Forensic Services Polygraph Examination Report conducted shortly after his arrest on August 13, 2025.

Mr. Deckinga did not trade CSAM for financial compensation but rather traded it to be allowed into certain chat groups. He also did not coerce any minor child to produce CSAM.

This is Mr. Deckinga's first criminal offense. He has no prior criminal convictions, and his only prior legal matter was a speeding citation in 2009.

### C. Education and Employment

Mr. Deckinga graduated from Christian High School in Palos Heights, Illinois, in June

2

2002. He earned his Bachelor of Arts degree in History, with minors in Theology and Business, from Trinity Christian College in 2006.

Mr. Deckinga has a long and stable history of lawful employment. At the time of the instant offense, he was the Vice President Advancement at Mid America Reformed Seminary (MARS). He held this position for over nine (9) years. Mr. Deckinga held significant professional responsibilities, including developing resources, conducting fundraising activities, and providing presentations at ecclesiastic assemblies. He was also responsible for maintaining relationships with individual donors to meet MARS' annual budget of approximately two million dollars ($2,000,000.00).

Prior to his employment at MARS, Mr. Deckinga was employed at Sherwin-Williams Paint in Illinois for approximately ten (10) years. While at Sherwin-Williams, he worked as an outside sales representative and as a store manager.

His employment record demonstrates the ability to maintain professional relationships, perform complex job responsibilities, and advance within organizations. It also reflects stability and the ability to support his family, as well as meet court-ordered financial obligations.

D.    <u>Physical and Mental Health</u>

Mr. Deckinga has no health issues and no history of mental health issues or treatment. He is prepared to commit to behavioral counseling to address his addiction to pornography and understands that finally dealing with this issue in an open and honest manner is the key to his future success. Mr. Deckinga is voluntarily requesting to be placed in the Residential Sex Offender Program in the Bureau of Prisons to begin this process.

E.    <u>Substance Abuse History</u>

Mr. Deckinga has a limited history of alcohol usage and no history of illegal drug use. He

3

began using alcohol at eighteen (18). Mr. Deckinga continued to consume alcohol on a weekly basis until shortly before his arrest. He has never participated in substance abuse treatment.

F.  <u>Risk Assessment</u>

On November 5, 2025, Mr. Deckinga voluntarily underwent a comprehensive Psychosexual Risk Assessment conducted by Sean Samuels, PsyD, MLS, CSAYC, HSSP, a clinical psychologist licensed in Indiana (Sealed Exhibit B).

Dr. Samuels conducted an approximately three (3) hour diagnostic interview with Mr. Deckinga and reviewed extensive documentation, including law enforcement reports, the Indiana State Police Forensic Services Polygraph Examination Report conducted on August 13, 2025, the criminal complaint, and indictment.

Dr. Samuels' assessment concluded that Mr. Deckinga represents a Level I Risk for general recidivism and a Level II Risk for sexual violence. According to the risk assessment framework presented in Dr. Samuels' report the recidivism rate for such individuals range from 2%-5% and 5% to 29% respectively. Dr. Samuels specifically noted that Mr. Deckinga's likelihood for sexually violent recidivism is slightly lower than the 26.% recidivism rate for the population of Lake County sexual offenders.

Dr. Samuels also indicated that Mr. Deckinga does not demonstrate interpersonal, affective, lifestyle, or antisocial aspects associated with psychopathy. He noted that Mr. Deckinga benefits from having social support and a willingness to participate in interventions to minimize the likelihood of reoffending in the future.

Dr. Samuels recommended that Mr. Deckinga could receive therapeutic intervention in the community with a high level of supervision.

4

G.    Current Incarceration and Plan for the Future

Mr. Deckinga has been incarcerated in the Hammond City Jail since his arrest on August 13, 2025. He has had no disciplinary issues while incarcerated. Mr. Deckinga has spent a significant amount of time reflecting on his conduct and the broad range of consequences due to his actions.

Mr. Deckinga has benefited from consistent visits from his family, friends, and church community. It has given him an opportunity to admit his conduct and to begin rebuilding the relationships that he has damaged.

Mr. Deckinga's primary focus remains on overcoming his pornography addiction. He understands that he must work to finally address these issues, so he will be able to provide financial and emotional support for his family upon his release.

Mr. Deckinga remains thankful for the support system provided by his family, friends, and church community.

## IV. Defendant's Recommended Sentence

The United States Sentencing Commission acknowledges that U.S.S.G. §2G2.2, was not developed through the Sentencing Commission's usual empirical study and expertise but rather it reflects congressional directives to increase penalties. This deviation from the Commission's standard methodology undermines the guidelines credibility, as it is "fundamentally different from most guidelines because it was shaped by congressional mandates rather than empirical data. *See United States v. Price*, 775 F.3d 828 (7th Cir. 2014); *See also United States v. Dorvee*, 616 F.3d 174 (2nd Cir. 2010).

The guideline incorporated multiple enhancements that apply in nearly all cases, such as those for using a computer, possessing images of children under twelve (12), and possessing a

5

certain number of images. These enhancements often result in sentencing ranges approaching the statutory maximum, even for first-time offenders, without adequately distinguishing between varying levels of culpability. This approach has been criticized as inconsistent with the sentencing principles outlined in 18 U.S.C. § 3553(a), which requires sentences to be "sufficient, but not greater than necessary. *See Id.*

This Court is not bound to follow U.S.S.G. §2G2.2 strictly and may vary from it based on policy disagreements. The Supreme Court in *Kimbrough* affirmed that judges may deviate from guidelines that lack empirical grounding. *See Kimbrough v. United States*, 552 U.S. 85 (2007).

Surveys of federal judges have revealed widespread dissatisfaction with the sentencing ranges under U.S.S.G. §2G2.2. A 2010 survey indicated that a majority of judges believed the sentencing ranges for possession, receipt, and distribution of child pornography were excessively high, further supporting the argument that the guideline does not reflect judicial consensus or practical sentencing needs. *United States v. Maulding*, 627 F.3d 285, 287 (7th Cir. 2010)(*Citing* U.S. SENTENCING COMM'N, RESULTS OF SURVEY OF UNITED STATES DISTRICT JUDGES JANUARY 2010 THROUGH MARCH 2010, at tbl.8 (2010).

Historically, individuals sentenced for non-production child pornography offenses receive a below guideline sentence, with the typical downward departure being a 20% to 30% reduction. *See* U.S. SENT'G COMM'N, REPORT TO THE CONGRESS: FEDERAL CHILD PORNOGRAPHY OFFENSES (2012). https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf; *See also* U.S. SENTENCING COMM'N, REPORT TO THE CONGRESS: FEDERAL CHILD PORNOGRAPHY OFFENSES (2021). https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-

publications/2021/20210629_Non-Production-CP.pdf.

While the Court must first correctly calculate the sentencing guidelines, the Court decides the appropriate sentence under 18 U.S.C. § 3553. *United States v. Booker*, 543 U.S. 220 (2005). An examination of the data collected by the United States Sentencing Commission for fiscal year 2024, have found that the base offense level for every offender sentenced under U.S.S.G. §2G2.2 was increased for a specific offense characteristic adjustment (100%). USE OF GUIDELINES AND SPECIFIC OFFENSE CHARACTERISTICS GUIDELINE CALCULATION BASED, FISCAL YEAR 2024. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2024/Ch2_Guideline_FY24.pdf.

Nearly all child pornography cases involve images of prepubescent minors (92.6%) and nearly all child pornography cases involve the use of a computer (97.3%). *Id.* Seventy-five percent (75%) of all child pornography cases involved 600 or more images (75.0%) and over fifty percent (50%) of all child pornography cases involved material that portrays sadistic or masochistic conduct or other forms of violence (50.6%). *Id.* As a result, these factors are no longer helpful in distinguishing the seriousness of one case from another.

Rather factors that favor a sentence below the advisory sentencing guideline range for Mr. Deckinga would include: 1) the fact that Mr. Deckinga did not produce CSAM, as production represents a qualitatively different harm, as it involves the direct victimization and exploitation of children; 2) the lack of evidence that Mr. Deckinga, organized, maintained, and protected a "collection" over time; 3) the fact that Mr. Deckinga has no history of engaging in hands-on sexual abuse of children; 4) the fact that Mr. Deckinga did not financially profit from the distribution of CSAM, while he engaged in trading activity the absence of financial gain suggests a different motivation and degree of culpability than profit-driven distribution; 5) the

fact that Mr. Deckinga has no prior criminal history; 6) the fact that Mr. Deckinga has stable family relationships and a stable employment history, which support the likelihood of successful rehabilitation and reintegration; 7) the fact that Mr. Deckinga has agreed to provide restitution to the victims of his offense; and 8) that an objective risk assessment conducted by Dr. Sean Samuels, a licensed clinical psychologist, indicates that Mr. Deckinga presents a low risk of recidivism and is amenable to treatment in the community, thereby lessening the need to protect the public from further crimes.

The advisory guideline range does not represent a necessary sentence for Mr. Deckinga under the parsimony principle of 18 U.S.C. § 3553. While the offense conduct is serious and warrants punishment, an individual assessment of the statutory sentencing factors supports a sentence substantially below the advisory guideline range followed by a lengthy term of supervised release with stringent conditions as set out in the presentence report.

A sentence of 60 months, while at the minimum of the statutory penalty range, is still a substantial federal prison sentence. It adequately reflects the seriousness of the offense and provides just punishment for a first-time offender like Mr. Deckinga. Finally, since Mr. Deckinga presents a low risk of recidivism, a sentence below the advisory guideline would still facilitate Mr. Deckinga's ability to engage in the Residential Sex-Offender Program in the Bureau of Prisons and would allow him to transition to therapeutic intervention in the community while on supervised release. This type of sentence would more likely achieve the purposes of sentencing than a longer term of incarceration.

Under the circumstances, a sentence of 60 months followed by 15 years of supervised release, is a reasonable and appropriate sentence under the factors enumerated in 18 U.S.C. § 3553.

Mr. Deckinga would request the following recommendations: 1) that he be incarcerated as close to northwest Indiana, as possible, to allow for family visitation, with consideration of placement at FCI Milan; 2) that he be given credit for time already served from August 13, 2025, to present; 3) that he be considered for placement in the residential sex-offender treatment program; 4) that he be allowed to participate in the prison industries program; and 6) that he be allowed consideration for placement in the residential re-entry program.

*Dated:*    April 16, 2026

Northern District of Indiana
Federal Community Defenders, Inc.

By:    /s/ Peter L. Boyles
Peter L. Boyles, Staff Attorney
2929 Carlson Drive, Suite 100
Hammond, IN 46320
Phone: (219) 937-8020
Email: peter_boyles@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all parties of record.

s/ Peter L. Boyles