**To the Honorable Judge Philip P. Simon,**

My name is Andre Mikrut. My wife and I moved to Northwest Indiana in early 2023 with our two young children. For more than two years, we built a life in what we believed was a safe and supportive neighborhood—one filled with families and children who play together daily.

In August 2025, that sense of safety was shattered when law enforcement activity at a nearby residence revealed the nature of the defendant's crimes. While I did not have a personal relationship with him, his home is directly across from ours. Our block alone is home to dozens of children, and the proximity made the situation deeply personal for every family here.

Like many parents, my initial reaction was disbelief. That disbelief gave way to heartbreak—for the victims, and for the defendant's family. Over time, as more details became public, that heartbreak has been replaced with grave concern about the safety of our children and the broader message being sent.

In recent days, many in our community have reviewed the full extent of the defendant's actions. We have also seen numerous character statements submitted on his behalf. It is difficult to reconcile those statements with the severity of the harm done and the lasting impact on victims—both known and unknown.

As parents, we are left asking what message this sends to children. When adults—particularly those in positions of trust—publicly support someone who has admitted to such offenses, it risks discouraging future victims from speaking out.

I do not consider myself an activist or a public figure. However, the safety of our children compels me to speak. This is not about politics or personal beliefs—it is about protecting vulnerable members of our community.

I respectfully urge the Court to consider the seriousness of the offense, the risk to the community, and the need to protect children when determining sentencing. I support the prosecution's recommendation of 228 months of incarceration followed by 20 years of supervised release.

Anything less raises significant concerns for the safety of our community and the many children who live here.

Respectfully,
Andre Mikrut

April 21, 2026

The Honorable Philip P. Simon

**RE: Sentencing Recommendation regarding Michael Deckinga**

Your Honor,

I am writing this letter to you as both a concerned neighbor of Michael Deckinga and a law enforcement professional. My name is Ray Jansma, and I am a police detective in the state of Illinois with 18 years of experience. I have resided in Dyer, Indiana, for over a decade, living just half a block away from the defendant.

While I have never personally met the defendant, I have observed him in our neighborhood over the past few years, and I previously had heard from the local community that he was a good upstanding man with Christian and family values. His numerous children have interacted with my family over the years while in the neighborhood and they appeared to be fun loving and carefree kids. My heart breaks for them and I believe the family and friends of Mr. Deckinga are also victims in this situation.

It was with deep concern that I learned of his arrest last year for the possession and distribution of child pornography, along with communicating with very young minors to participate in his crimes and victimize such vulnerable innocent children. I am writing to respectfully urge the Court to consider a sentence that reflects the egregious nature of these crimes—one that significantly exceeds the five-year term requested by the defense.

In my professional experience as a detective, I have seen firsthand the devastating, lifelong effects these crimes have on child victims. These are not victimless acts; they represent the ongoing exploitation of children. Data and psychological studies consistently show that offenders in this category often exhibit high rates of recidivism and possess a mindset that requires intensive, long-term psychological intervention before they can be safely reintegrated into society.

I have had the opportunity to review several character letters submitted on behalf of the defendant and a few of the alarming and disturbing details that have been disclosed by the US Attorneys.

It is deeply alarming that the defendant's inner circle appears so thoroughly misled that they remain focused on his past 'credibility' rather than the gravity of his actions. To a professional observer, this suggests a calculated manipulation by the defendant of those closest to him. It is critical to note that the defendant displayed no signs of remorse or any change in habits prior to his arrest; he only began 'saying the right things' once he was caught and faced with the consequences of the law.

This was not a one-time lapse in judgment, but a sustained pattern of behavior spanning multiple years. A person who truly recognizes their behavior as a mistake does not continue that behavior for years while progressively diving deeper into increasingly dark areas of the internet. In my professional opinion, had law enforcement not intervened, this trajectory of escalation would have almost certainly led to in-person contact with minors and even more heinous crimes. His current expressions of regret appear to be a byproduct of apprehension, not a genuine shift in character.

As a Christian man myself, I believe in the possibility of forgiveness and redemption for even the most serious offenses. However, spiritual redemption and public safety are not mutually exclusive. The defendant can pursue a path of personal atonement while simultaneously serving a term of incarceration that ensures the safety of the community—contrary to the defense's suggestion that leniency is a prerequisite for rehabilitation.

Most concerning is that out of numerous defense letters, only one person made any mention of the victims. In this matter, the victims are the only ones who deserve our empathy and protection. They deserve the peace of mind that comes with knowing their predator will be incarcerated for a substantial period, at a minimum longer than it will take for those children to reach the age of 18.

On a personal level, I am a husband and a father to three young children who live in immediate proximity to this individual's residence. The thought of an offender of this caliber returning to our neighborhood, or any neighborhood with children, in just a few short years is unacceptable. My professional background informs my understanding of the risk, but my role as a father drives my plea for the safety of our community.

I trust in your wisdom to hand down a sentence that prioritizes public safety, acknowledges the trauma of the victims, and ensures that the defendant is not afforded the opportunity to re-offend in the near future.

Thank you for your time, your service to the bench, and your consideration of this request.

Respectfully,

**Ray Jansma**

April 20, 2026


To the Honorable Judge Philip P Simon:


I am writing on behalf of the safety of my family and to the safety of the children in the community where I live. I want to extremely express my concern over the sentencing of Mr. Michael Deckinga, a known child predator, who has pled guilty on record to child pornography distribution. Mr. Deckinga is a neighbor on the block that I reside and where my children play with their friends. The public record to date is absolutely horrifying. To my knowledge, I understand there have been an abundance of letters in support of Mr. Deckinga. I do NOT believe the individuals who are in support of Mr. Deckinga, and his so called 'integrity', 'remorse', and 'religious beliefs' hold any merit to the charges brought before him.

The information provided regarding the facts of this case are deeply concerning. As a parent, neighbor and a social worker, I feel both a personal and professional responsibility to speak to the seriousness of these offenses and risks they pose to our community primarily our children who are of various ages (0-18) on our block. While not every person reoffends, the research shows that a high number of individuals involved in child sexual exploitation present a risk of reoffending. This is not a victimless crime. These are young, innocent children who have been greatly affected by Mr. Deckinga's actions. The abuse these victims experienced may result in long term emotional and psychological harm which can cause further mental health challenges such as depression, anxiety, self-harm and possibly suicide. This requires ongoing, long term mental health therapy to help the victims heal and recovery from the trauma and abuse they experienced.

Having a neighbor living among us in our community with these egregious offenses so close to our children naturally raises concerns about their safety and our peace of mind. I have two young daughters who are ten years old, and they will be at the same age as Mr. Deckinga's victims when/if he gets out on a good behavior release in less than five years. I, along with my husband and neighbors are asking for the maximum sentence by law in order to protect our children as well as the children in our community. Please, think of the victims…the children…when you deliver the consequences to the offender's choices.


Thank you for your consideration,

Gina Lavin, MSW School Social Worker
Kevin Lavin

4/20/2026

To the Honorable Court,

My name is Francesca Bonarigo. My husband and I moved to the Emerald Crossing neighborhood in April of 2022. Since then, we have welcomed two young children into our family, and we have cherished raising them in what we believed to be a safe, close-knit community filled with other young families.

Like many parents, we occasionally sought childcare. In March of 2025, I posted in our neighborhood Facebook group asking about weekend babysitters. I was contacted by Kim Deckinga, the spouse of the defendant, who offered that her daughter—then an eighth grader with several younger siblings—had babysitting experience. We briefly discussed arranging a meeting, but ultimately, my husband and I decided our children, then ages one and two, were too young to be cared for by someone of that age.

Months later, when news broke that a member of our community had been arrested for crimes against children, I was shocked to recognize the name: Michael Deckinga. I immediately connected it to that earlier conversation. The realization that I had come close to inviting a connection between my children and this family was deeply disturbing. I have since been unable to shake the thought of what could have happened, or what other families may have unknowingly risked.

Emerald Crossing is a neighborhood defined by families and children. On any given day, streets like 103rd Lane, Towle Street, and Robinson Street are filled with children riding bikes, playing games, and simply being kids. It is precisely the kind of environment where parents should feel secure—not fearful. Individuals who commit crimes against children fundamentally violate that sense of safety and trust, and they have no place in communities like ours.

As a mother of two young children, I cannot overstate the fear and anger I feel knowing someone capable of such actions lived among us, undetected. If these crimes could be concealed from those closest to him—his spouse, his family, his neighbors—it raises serious concerns about what he may be capable of in the future. The risk to children is simply too great.

I respectfully ask the Court to prioritize the safety of children and families above all else in sentencing. I ask the court, what would you want for your own family and community? While no sentence can undo the harm caused to his victims, it can serve to protect the community and affirm the seriousness of these crimes. I urge the Court to impose the full sentence available.

Thank you for your time and consideration.

Francesca Bonarigo

Mother of Two
Resident and Homeowner in Emerald Crossing

April 21, 2026

The Honorable Philip Simon
5400 Federal Plaza
Suite 4400
Hammond, IN 46320

Re: Community Safety Concerns and Sentencing Consideration for Michael Deckinga

Dear Judge Simon,

I am writing as a resident of Dyer, Indiana, a parent of young children in Emerald Crossing, and a former member of the military, regarding the case involving Michael Deckinga, who has been convicted of offenses related to child pornography.

Our community is home to many families with young children, and the safety and well-being of those children is of the utmost importance to all of us. The nature of these offenses is deeply troubling and raises serious concerns about the potential risk to our neighborhood should this individual return following incarceration.

As both a parent and someone who has served in the military, I take the concept of protecting others—especially children—very seriously. I am deeply concerned about the impact this situation has on the sense of safety in our community. In Emerald Crossing, where I live, there are many young children playing outside daily, and families who expect and deserve to feel secure in their own neighborhood.

As a parent, I find it extremely concerning to consider that someone convicted of crimes involving the exploitation of children could reside in close proximity to families. Situations like this create a lasting sense of fear and unease among parents who simply want a safe and secure environment in which to raise their children.

Given the severity and lasting impact of these crimes, I respectfully urge the Court to impose the maximum sentence allowable under the law. Doing so would appropriately reflect the seriousness of the offense, help protect our community, and send a clear message that crimes against children will be met with the full weight of the law.

While I understand the importance of rehabilitation and eventual reintegration, I strongly encourage the Court to prioritize the safety of children and the broader community in both sentencing and any future considerations regarding residency.

Thank you for your time, consideration, and service.

Respectfully,
Tom Oliveira

The Honorable Philip P Simon
5400 Federal Plaza
Suite 4400
Hammond, IN 46320

Dear Judge Simon,

I am writing to express my concerns regarding the upcoming sentencing and placement of Michael Deckinga in case number 2:25-CR-85.

Our neighborhood is home to many families with young children who regularly play outside, ride their bikes, and interact freely with one another. The possibility of a convicted sex offender residing in close proximity has created significant fear and anxiety among residents. Parents are deeply concerned about their children's safety and the potential risks associated with this situation.

We respectfully ask the Court to carefully consider the impact that this decision may have on the well-being and sense of security within our community. Ensuring that children are able to grow up in a safe and protected environment is of the utmost importance to all of us.

We urge the Court to consider the full severity of the offense and the lasting impact such crimes have on victims. The harm caused in these cases is profound and enduring, and we respectfully ask that the sentence reflects the seriousness of the crime within the bounds of the law.

We trust that the Court will weigh these concerns alongside all legal considerations in determining the most appropriate outcome in this case. Thank you for your time and attention to this matter.

Sincerely,

04/21/2026

Amanda C. Montalvo

Concerned resident of Emerald Crossing Dyer, IN.

RE: Community Impact Statement – United States v. Michael Deckinga

Your honor,

My husband and I are jointly submitting this statement as residents of the defendant's neighborhood, Emerald Crossing located in Dyer, Indiana since 7/2020, and as a Family Nurse Practitioner. We are also parents of a nine-year-old child, and our two-year-old granddaughter.

I understand that the defendant has plead guilty to federal charges involving the distribution of child sexual abuse material, including content involving children under the age of 12. As both a healthcare professional and a member of this community, I find the nature of these offenses deeply concerning due to the well-documented and lasting psychological harm experienced by victims of exploitation.

Our neighborhood is home to a significant number of children—over 40 minors under the age of 12 on his street alone—and there is a daycare facility located nearby, Empowered Minds Child Care Center. There is a private school, Providence Christian academy, k-9. This creates a setting where child safety must be a primary consideration in any decisions regarding sentencing, supervised release conditions, and potential residential placement.

From a clinical perspective, the protection of children and prevention of harm are foundational principles. Children who are victims of exploitation often experience long-term emotional, psychological, and developmental consequences. These realities underscore the seriousness of the offense and the importance of safeguards that minimize any future risk.

Given the severity of the offense, the vulnerability of the victims, and the high concentration of children in this community, I respectfully urge the Court to impose a sentence that reflects the full seriousness of this conduct. In my view, a sentence at or near the maximum allowable under federal guidelines would best serve the interests of justice, deterrence, and the protection of children.

I also respectfully ask that the Court and U.S. Probation give strong consideration to:

- The high concentration of minors in the immediate residential area
- The proximity of childcare facilities
- The nature and severity of the admitted offenses
- The need for strict supervision conditions that prioritize child safety

This statement is offered to emphasize the importance of community safety and the protection of children as key factors in sentencing and post-release decisions.

Thank you for your consideration.

Respectfully,

4\21\2026

Teressa Meseberg, FNP-BC

4/21/2026

Chad Meseberg, Vascular Specialist.

To Whom It May Concern,

I am writing to strongly support your efforts to pursue a harsher sentence in the case regarding Michael Deckinga. And to express serious concern about any outcome that would allow this individual to return to a residential neighborhood like ours.

I am aware that letters have been submitted on behalf of the defendant describing him as remorseful and of good character, including references to personal or religious efforts at reform. However, those claims stand in direct contrast to the facts established in court and should not outweigh the demonstrated pattern of behavior.

According to court records, this conduct occurred over a period of approximately five years before it was stopped. This was not an isolated incident or lapse in judgment, it was sustained, repeated behavior. The fact that it continued until intervention raises significant concerns about whether any claimed remorse is a result of accountability or simply the consequence of being caught.

More concerning still are the defendant's own admissions. He has openly acknowledged being sexually attracted to children, including statements indicating a preference for younger victims. In addition, documented messages show that he expressed sexual interest in his own nieces, stating multiple times that he found his teenage nieces highly attractive and describing inappropriate intent toward them. These are not abstract concerns; they are direct and deeply troubling indicators of risk.

It is deeply troubling that there is even a possibility that he could return to a family-centered neighborhood like ours in less than a handful of years. Our community is filled with young children, and there is a bus stop just down the street where children gather daily. Allowing him to return to this environment would introduce a known and documented risk into a space where children should be safe.

The impact of such a decision would be immediate and lasting. Families would be forced to change how they live, children would no longer be able to play freely outside, walk to the bus stop independently, or enjoy basic childhood activities without constant supervision and fear. This places an unreasonable and unfair burden on every family in the neighborhood.

While character references may highlight selective aspects of the defendant's life, they do not erase the duration, severity, or nature of the conduct, nor the admissions that point to ongoing risk. Community safety, especially the safety of children, must be the primary consideration.

I urge you to continue advocating for a sentence that fully reflects the seriousness of this case and prioritizes long-term protection for the community. I also respectfully ask that any consideration of future placement take into account the clear and significant risk posed by proximity to children, particularly in areas such as ours.

Protecting children should not be a secondary consideration, it must be the deciding one.

Thank you for your continued work and commitment to this case.

Sincerely,
Brittany Kozlowski
Emerald Crossing Resident

April 21, 2026

The Honorable Judge Philip P. Simon

United States District Court

Northern District of Indiana

**Re: Sentencing Statement – Case No. 2:25-CR-85**

Dear Judge Simon,

My name is Randall Wright, and I serve as a Deputy Fire Chief for a full-time municipal fire department in Illinois. In this role, I am responsible for ensuring the safety, preparedness, and operational readiness of both the public and the personnel under my command. My professional duties require continuous risk assessment, incident prevention, and the implementation of safeguards designed to reduce harm within the community. My wife, Danna Wright, a surgical Registered Nurse, and I reside with our two daughters, ages four and seven, in the Emerald Crossing neighborhood in Dyer, Indiana, where we have lived since 2020.

We respectfully submit this statement regarding the sentencing of Mr. Deckinga with full respect for the Court and the judicial process, and with the understanding that the Court has been presented with the complete factual record in this case.

Our neighborhood is composed of numerous families with young children. On our street alone, there are approximately 50 children, with more than 75 percent under the age of 10. It is common to observe children outdoors daily riding bicycles, playing in front yards, and moving freely between homes. This environment reflects a high level of trust and perceived safety that is fundamental to the well-being of our community.

Based on the information regarding the nature, duration, and pattern of conduct in this case, the proximity of Mr. Deckinga's intended residence introduces a level of risk that is both immediate and difficult to mitigate for myself and many of my neighbors. From a risk management standpoint, this represents a concentrated exposure involving a significant population of vulnerable individuals, particularly given the number and age of children who regularly occupy the immediate area.

In my professional experience, incidents involving children are among the most time-sensitive and high-risk events we respond to, often leaving little margin for prevention once a threat is present. As a parent, neighbor and public servant, I respectfully ask the Court to consider the maximum sentence that reflects the seriousness of the conduct and includes conditions that meaningfully prioritize the safety of children and the surrounding community.

Respectfully submitted,

Randall Wright

The Honorable Philip P. Simon
United States District Court
Northern District of Indiana

April 21, 2026

Re: United States v. Michael Deckinga, Case No. 2:25-CR-00085

Dear Judge Simon,

I am writing on behalf of my family and our neighborhood. We reside in the same neighborhood and community as Michael Deckinga. This neighborhood is filled with children, many of whom are school aged and roam freely between homes while playing outside.

My family moved to this neighborhood 3 years ago. As a father to young children, I desired to find a neighborhood that was safe and family oriented. I was ecstatic when we found our home. My family felt safe and secure in this new neighborhood.

August 2025 changed all that. The events of that morning will forever be burned into my mind. The countless law enforcement, the confusion of what was happening in our quiet neighborhood and the uncertainty was unsettling. It created a level of fear and concern that I did not expect to feel so close to home. When the allegations came out later that day, it was shocking and reprehensible. All I could feel at that point was sadness for his wife and children and for the rest of our community. He hid this from all of us. At that moment it established a greater desire for me to be hypervigilant regarding protecting my children and the rest of the neighborhood from individuals like this.

The new disturbing details revealed in the documents from April 2026, are very graphic and horrifying. The Defense is asking for the minimum sentence and for him to be released back to this residence—a stones' throw from my home. This is utterly unacceptable. This puts my children and all the children in our neighborhood at risk. While this is heartbreaking for the children of the defendant to be separated from their father, this man stands accused of taking pleasure in exploited children who are young and innocent. As a father, it is my duty to protect my children and the children in this neighborhood from perpetrators like this.

While I understand that the defendant has repented of his wrongdoing and is sincere in his apologies. I cannot in good conscience let that change the importance of a sentencing that reflects the seriousness of these crimes. The documents alone speak volumes of the defendant's desire to seek and violate children. The serious nature of this crime is not one that is rectified by an apology or penance, it is by a full course of rehabilitation, intense supervision, and accountability that a longer sentence gives.

I respectfully request, Your Honor, that you consider these allegations of distribution of child pornography along with the evidence presented and the danger it imposes on the safety of the children of this community.  I am respectfully requesting as a father, a medical professional and a concerned neighbor to impose a sentence that reflects the federal sentencing as recommended by the Prosecution.

Respectfully,

Ryan McCabe

The Honorable Philip P. Simon
United States District Court
Northern District of Indiana

Re: United States v. Michael Deckinga, Case No. 2:25-CR-85

Dear Judge Simon,

I am writing to you as a deeply concerned member of the community and as someone personally affected by the actions of the defendant in this case.

This individual was not a stranger to us. They were our neighbor, someone we trusted, someone we considered a friend. We welcomed them into our home, and, most painfully, we allowed our children into theirs.

The charges they now face, distribution of child pornography, have shattered that trust in a way that is difficult to fully put into words.
What we feel is a mix of extreme sadness, anger, and profound disappointment. Sadness for the victims who were exploited and harmed. Anger at the betrayal of trust and the hidden danger that existed so close to our family. And disappointment that someone we believed to be safe and trustworthy could be involved in something so deeply disturbing.

As a parent, my highest responsibility is to protect my children. Children are vulnerable and rely entirely on adults to keep them safe from harm. Because of this situation, we have been forced to have difficult conversations with our young children and ask questions no child should ever have to experience or answer.

This situation has not only impacted our family emotionally, but it has also shaken our sense of safety within our own neighborhood. It is impossible to overstate how violating it feels to realize that someone with access to our children and our lives was engaged in such harmful and criminal behavior.

For these reasons, I respectfully urge the Court to consider a prolonged sentence that reflects the seriousness of these offenses and the lasting harm they cause not only to the direct victims, but to families like ours and the broader community. Additionally, I strongly support strict and long-term residency restrictions to ensure that the defendant cannot live in close proximity to children or return to a neighborhood environment where trust was so severely broken.

Protecting children and preserving the safety of our communities must remain a top priority. I hope the Court will take into account the depth of harm caused and the need for both justice and prevention moving forward.

Thank you for your time and consideration.

Danielle Lang

To the Honorable Judge,

I am writing to you as a Soldier with 16 years of service in the United States Army, someone who has deployed twice and endured the realities of combat, including numerous firefights in defense of this country. I have dedicated my life to protecting others both at home and abroad, and I take that responsibility seriously not only as a Soldier but as a father.

Today, I am currently serving as a recruiter, a role I have held since 2022, helping to bring the next generation into service. I built my home just two years ago in a community where I intended to settle down and retire in the next four years. It was supposed to be a place of peace and safety for my family.

Instead, I now find myself living directly across the street from an individual convicted of distributing child p****graphy someone who engaged in this behavior for years, knowingly contributing to the exploitation and abuse of children. These are not victimless actions. Every image represents a real child who was harmed, and the distribution of that material continues that harm.

As a father of a 3-year-old and a 17-year-old, I cannot begin to describe the anger and concern I feel knowing that a predator lived and still lives so close to my children. I am forced to question the safety of my own home, the place where my children should feel the most secure. I am reminded daily that someone capable of supporting and participating in the exploitation of children resides just steps away from where my kids live, grow, and play.

I have faced enemies overseas, but I never imagined I would come home and feel unsafe in my own neighborhood. I fought so that families like mine could live without fear, yet now I am forced to constantly worry about the safety of my children in the place that should protect them the most.

This situation has not only impacted my sense of security, but it has also affected my ability to trust the environment around me. We live in a neighborhood where children play freely, ride their bikes, and interact with one another. That sense of innocence and safety is now overshadowed by the knowledge of what this individual has done and the harm he has supported. As a parent, I cannot ignore the potential risk this poses not just to my own children, but to every child in this community.

This is not just a legal matter to me it is deeply personal. The presence of someone capable of exploiting children in such a manner poses a real and lasting threat to the community. It erodes trust, security, and the sense of safety every family deserves.

I respectfully urge the Court to consider the severity of this crime and the long term danger it represents. Individuals who commit these offenses cause irreversible harm, and their

actions must be met with consequences that reflect the seriousness of their behavior. I strongly believe that the maximum sentence allowable is warranted in this case.

I appreciate your time and consideration in reviewing this letter. My family, and others in our community, deserve to feel safe in our homes.

Respectfully,

BONILLA.KEVIN.LEONEL.1398250954
Digitally signed by
BONILLA.KEVIN.LEONEL.1398250954
Date: 2026.04.20 22:12:29 -05'00'

Kevin Bonilla

Staff Sergeant, United States Army

The Honorable Philip P. Simon
United States District Court
Northern District of Indiana

Re: United States v. Michael Deckinga, Case No. 2:25-CR-85

Dear Judge Simon,

My husband and I live in close proximity to Michael Deckinga, where we are raising our children. Our block alone includes nearly 50 children between two stop signs, with hundreds more in the surrounding subdivision. A daycare and school are located just outside our neighborhood.

After learning the details of this case, we are deeply concerned. The conduct described reflects years of deliberate behavior involving the distribution of child sexual abuse material, solicitation of such material, and sexually explicit communications with individuals believed to be minors.

We have also read letters describing Mr. Deckinga as a devoted father, man of faith, and trusted community member. However, the conduct in this case stands in direct conflict with those characterizations. Most concerning to us is that this behavior occurred over an extended period while he was already embedded in his family, church, and community—factors now cited as reasons for leniency.

We are also troubled by the recommendation that he should not have access to the internet or be left unsupervised with children. In a neighborhood like ours, this is not a risk that feels manageable.

This situation has already changed how we allow our children to live and play. What was once a safe, open environment no longer feels that way.

We respectfully ask the Court to impose a sentence that reflects the seriousness of this conduct and prioritizes the protection of children. We also support the Government's recommended sentence as outlined in its filing.

Thank you for your consideration.

Respectfully,

Maggie Mikrut

The Honorable Phillip P. Simon
United States District Court

Dear Judge Simon,

I am writing as a resident of Dyer, Indiana, and as a mother of three young children, to strongly express my concern regarding the potential release or leniency for an individual convicted of offenses involving the possession and distribution of child sexual abuse material, including content depicting children from infancy through adolescence.

These crimes are not abstract or victimless—they represent the documented abuse and exploitation of real children. Every act of possession and distribution directly contributes to the continued victimization of those children and sustains a market built on their suffering. The nature of these offenses is profoundly disturbing and should be treated with the utmost seriousness.

As a parent, I feel a profound responsibility not only to protect my own children, but to support the protection of all children in our community. The possibility that individuals involved in such offenses could reenter the community without meaningful accountability raises serious concerns about safety and prevention.

I am also deeply concerned about the message that leniency in such cases sends, both to victims and to the public. Meaningful consequences are essential not only for accountability, but also for deterrence and the protection of vulnerable individuals. Anything less risks diminishing the gravity of these offenses and undermining confidence in the justice system's role in safeguarding children.

I respectfully urge the Court to give full weight to the severity of these crimes, the lasting harm inflicted on victims, and the importance of protecting the community when making its determination.

Thank you for your time and consideration.

Respectfully,
Sarah A. Masterson

The Honorable Philip P. Simon
United States District Court
Northern District of Indiana

Re: United States v. Michael Deckinga, Case No. 2:25-CR-00085

The Honorable Judge Simon:

I am a close proximity neighbor to Michael Deckinga's residence.

Our family moved here 3 years ago. We were so excited to see how many kids this new neighborhood had! We often spent many days outside with all of the new families—building friendships while kids roamed between yards, up and down the street. This sense of community and safety on our street is what we dreamed of for years. Life continued on into summer after summer, until August 13, 2025.

I will distinctly remember that morning as if I was reading it from the front page of the newspaper.  It was the first day of school. We were walking with our child to the bus stop and noticed an alarming number of unmarked "police" vehicles lining up along the street. Officers were exiting the vehicles and moving to their home. The confusion, disbelief and fear consumed our street. What slowly was revealed, was appalling and graphic news that rocked us all.

This moment has been a turning point in our neighborhood. As details came to light, it was just the tip of the iceberg. The gravity of these vile, heinous and disturbing crimes has overwhelmed our community.  Our once idyllic neighborhood has become a place where we no longer feel that sense of safety and freedoms. The height of caution has risen, relationships have changed, and the intense need to protect our children and all of the children nearby has become paramount.

As a mother, I am gravely concerned for the safety of my children, as well as those in our neighborhood. There is a large majority of the neighboring kids directly near this residence.  This risks the lives of children to freely play and experience a carefree childhood without a predator next door.  The recent information revealed of his offenses is alarming and concerning.

As a parent and a medical professional, it is vital that we speak up for those who are unable. It is our responsibility to give our community, filled with children, protection from child abuse offenders. To provide these children safety and security as they grow.

Your Honorable Judge Simon, I respectfully ask that you give a just sentencing in line with the Prosecutor's Office. As a resident to this offender, it is of the utmost importance that he is not allowed to return to this neighborhood. Our desire to protect the innocence of children is what drives us.


Respectfully,

Concerned Neighbor and Mother

Honorable Judge Simon,

My family and I live in the Emerald Crossing neighborhood, and we have two young children who are now old enough to ride their bikes and visit friends on their own. Like any parent, I want to feel confident that our community is a safe place for them to grow up.

I understand that no one can ever fully guarantee safety in a public setting. However, allowing Mr. Deckinga to return to our neighborhood would make it impossible for me—and likely many others—to feel secure. It would fundamentally change how we live day to day and how much independence we can responsibly give our children.

I am asking you to please consider the impact this decision will have on families like mine. If the facts of this case support the conclusion that these crimes were committed, then I trust that you will take appropriate action. Protecting the most vulnerable members of our community should remain the highest priority, and decisions like this shape the trust we place in our legal system.

Thank you for your time and consideration.

Erich N. Rush

Laura C. Rush

April 21, 2026

Regarding Case Number: 2:25CR0085 PPS

Dear Honorable Judge Philip P. Simon,

My name is Kimberly Mewborne. I am a resident of St. John, IN and I am the mother of an 8 year old child. I was made aware of this case yesterday and have read many of the character witness letters written on behalf of Michael Deckinga. I do not know Michael or any of the people that have submitted these letters to the court.

This is a community impact letter. Michael Deckinga's home is located within 4 miles of my home. In the character witness letters, I recognized the attached picture as one taken at the St. John Baseball organization. My child participates in this organization, and I see that Michael must have participated as a coach. This is gravely concerning to me.

I am respectfully requesting that the court not grant any leniency in this case. In the letters, I repeatedly read what man of God Michael supposedly is. These associates of his said what a family man he is, how hard he works, and how honorable he is. I take it that he was all of these things at the same time he was distributing child pornography. A descent person, lawful member of our society, let alone an honorable Christian man doesn't delight in viewing pornography containing victims under the age of twelve years and distributes it to other pedophiles. I read repeatedly how remorseful Michael is. I'm sure he's very remorseful that he was caught, as he sits in jail. This pedophile wasn't even concerned about the consequences of his actions and the impact it would have on his own seven children when he was committing these crimes.

I trust that you will consider the many children that live and play in very close proximity to this individual's home. This community doesn't want predators like this lurking around our kids, coaching teams they're on, and having anything to do with any organizations that involve children. What I did not read in the letters was one mention of the impact these crimes have on the innocent victims. As you consider your decision, I trust that you will have the victims of these crimes in mind. They deserve justice. Our children need and deserve to be protected.

Sincerely,

Kimberly Mewborne



Date: 4/20/2026

Your Honor,

My husband and I have been residents in the Emerald Crossing Subdivision for 12 year. We are writing this letter in strong support of continued incarceration and strict residency restrictions for the defendant, Michael Deckinga, based on the serious and deeply harmful nature of the offense: Distribution of Child Pornography. This crime is not victimless. Every image, video, and private chat represents the abuse and exploitation of a child, and those who distribute such material contribute directly to the continued victimization of vulnerable minors.

Given the defendant's conduct, releasing him back to his prior residence would create an unacceptable risk to the surrounding community, particularly because of the hundreds of children that live in or frequent the area. The presence of a day care, schools, parks, families, and minors nearby makes this location wholly inappropriate for someone convicted of an offense involving the exploitation of children. On the defendant's block alone, there are over 45 children with majority of those children being under the age of 12.

The Court's foremost responsibility is the protection of the public, especially children who cannot protect themselves. Allowing the defendant to return to a residence surrounded by minors would undermine community safety and create fear among families who deserve to feel secure in their homes and neighborhood.

For these reasons, we respectfully urge the court to follow the sentencing recommendation of the Prosecutor's office and impose the strictest possible conditions to ensure the safety of children and the community. As members of law enforcement, we hold the highest regard for this Court, the judicial process, and the rule of law. We trust in the Court's responsibility to carefully weigh both justice and public safety, and we respectfully ask the Court do what is right and necessary to protect this community.

Respectfully,

Erika Koutsoumbas (Probation Officer)

Constantine Koutsoumbas (Police Officer)

Re: United States v. Michael Deckinga, Case No. 2:25-CR-85

Dear Honorable Judge Phillip P. Simon,

I am a resident of the neighborhood and a mother of young children where the defendant, Michael Deckinga, resides, living approximately five houses away. I am writing to express serious concern regarding the potential for the defendant to return to this community following sentencing.

Our neighborhood is home to more than 100 children, 40+ in our block alone. Children who regularly play outdoors, ride bikes, and move freely between homes. It has long been considered a safe environment for families. However, the details outlined in the Government's sentencing memorandum have significantly altered that sense of safety.

According to the memorandum, the defendant engaged in a prolonged and deliberate pattern of distributing child sexual abuse material over a period of years, including material involving very young children. The conduct described was not isolated, but repeated and sustained, and included communications with individuals believed to be minors, as well as efforts to solicit explicit material from them.

Of particular concern is the recommendation from the defendant's own expert that he should not have access to the internet or be left unsupervised with children or adolescents. Given the number of children in this neighborhood and their regular presence outdoors, this raises serious and practical concerns about how such restrictions could realistically be maintained if the defendant were to return to this environment.

Additionally, it appeared that the defendant relied in part on the image of a large, close-knit family and a strong religious background to project trustworthiness and moral character. While these qualities may reassure some, such perceptions can create a false sense of security. In my view, this perceived image makes it easier for others to believe he no longer poses a threat, despite the nature and duration of the conduct described in the record.

The nature and duration of the conduct described, combined with the presence of a large number of children in close proximity, creates a level of risk that cannot be ignored. The impact on this community has already been significant, and the prospect of the defendant returning has caused ongoing concern among families.

I respectfully urge the Court to give strong consideration to these factors when determining an appropriate sentence and any conditions of release.

Thank you for your time and consideration.

Respectfully,
Marycela Alejandre De Bonilla

April 21, 2026

The Honorable Philip Simon
5400 Federal Plaza
Suite 4400
Hammond, IN 46320

Re: Sentencing Consideration for Michael Deckinga

Dear Judge Simon,

I am writing as a concerned resident of the Emerald Crossing community regarding the sentencing of Michael Deckinga, who has admitted guilt in a case involving the sexual exploitation of minors.

Michael Deckinga resides on my street, and as a mother of young children, this situation is deeply concerning on both a personal and emotional level. Like many parents in our neighborhood, my daily life is centered around ensuring my children are safe—whether they are playing outside, walking through the neighborhood, or spending time at our local park. Knowing that someone who has committed offenses of this nature lives in such close proximity creates an ongoing sense of fear and uncertainty that no parent should have to carry.

Our street alone is home to over 40 children, and the Emerald Crossing neighborhood includes hundreds more. Additionally, our community is in close proximity to multiple daycares and schools, and we have a neighborhood park where children regularly gather and play. These are places that should represent safety, innocence, and normal childhood experiences, not places where parents feel the need for heightened vigilance due to the presence of a convicted offender.

The fact that this case involves the exploitation of multiple minors has had a profound impact on our sense of security and has raised serious concerns about the potential risk posed if the sentence does not adequately reflect the severity and scope of the offense. This is not an abstract concern, it is something that affects how we live, how we parent, and how safe we feel in our own homes.

With these concerns in mind, I respectfully ask the Court to impose the maximum sentence allowable under the law to help ensure the safety of our community and to set a strong precedent for any others who may consider committing similar offenses. Our children deserve to grow up in an environment where they are protected, and where actions that threaten their safety are met with the full weight of the law.

Thank you for your time and consideration of this matter.

Respectfully,
Mary Romano Oliveira

# A letter from our children, and the reason for maximum sentencing

*United States v. Michael Deckinga*

Case No. 2:25-CR-85 (N.D. Ind., Hammond Div.)

---

## Purpose of This Letter

Michael Deckinga's victims cannot speak for themselves. They are too young to make informed decisions, too young to fully understand what has happened to them, and too young to grasp that what was done to them will follow them for the rest of their lives. It is our job as a community to speak for them. It is our job as parents to protect our children. It is our job as human beings to make sure that monsters like Michael are never again given the opportunity to commit these crimes. This letter — and the research and effort behind it — has only one purpose: keeping our children safe.

This document compiles federal statistics, peer-reviewed research, case law, and documented real-world cases to support a community advocating that the Court impose the maximum appropriate sentence on Michael Deckinga. The government has requested 228 months (19 years) followed by 20 years of supervised release, which is near the statutory maximum of 240 months (20 years) for distribution of child sexual abuse material under 18 U.S.C. § 2252A(a)(2)(A) and (b)(1).

The research is organized around the Court's statutory sentencing factors under 18 U.S.C. § 3553(a): seriousness of the offense, deterrence, protection of the public, and the need for treatment. Each factual claim is followed by a numbered source. A consolidated source list appears at the end.

## Why This Case Warrants the Maximum — The Research Profile

Peer-reviewed risk research distinguishes between "CSAM-only collectors" (who tend to have lower sexual recidivism in controlled studies) and "mixed" or "dual" offenders — those who combine online offending with indicators of contact-offense risk. **On nearly every indicator in the published risk literature, Mr. Deckinga fits the higher-risk, mixed-offender profile, not the lower-risk collector profile.** The government's own memorandum documents this.

*Risk factors present in this case, mapped to the research:*
- **Active distribution over a sustained period.** Mr. Deckinga admitted distributing CSAM from November 22, 2024 through May 14, 2025, and admitted accessing CSAM for approximately five years using at least ten Kik accounts (Gov't Sent. Memo at 1, 3, 6). Distribution is a five-level Guidelines enhancement because it spreads the harm to every additional viewer and creates demand for more material.

- **Solicitation of production from minors.** He "repeatedly encouraged minors to produce CSAM of themselves" and "encouraged young adults to produce CSAM of children to which they had access" (Gov't Sent. Memo at 9). This is grooming-adjacent conduct that places him functionally in the "contact-risk" category, not the passive-collector category.

- **Expressed sexual interest in identified, accessible minors — his own nieces.** He told other users "I have a few sexy nieces," "Really want to f*** my 14-yr-old-niece's ass," "I fantasize about my niece," and when told another user's niece was 13, responded "Even hotter" (Gov't Sent. Memo at 3–4). Stated sexual interest in specific, real, accessible children is one of the CPORT (Child Pornography Offender Risk Tool) risk indicators — admission or diagnosis of pedophilic/hebephilic interest ([Source 5]).

- **Content severity — infants, toddlers, and sadistic/violent material.** The material included victims "as young as infants and toddlers," "sadistic or masochistic conduct," and "other depictions of violence" (Gov't Sent. Memo at 3). Content preferences for very young and sadistic material are correlated in the literature with entrenched deviant sexual interest.

- **Access to a household of minors upon release.** Mr. Deckinga plans to return to a home with seven children aged 2 to 15, and his own retained expert concluded he "should not have access to the internet or be left unsupervised with children or adolescents" (Gov't Sent. Memo at 9). Family access offenders whose first-identified victims are relatives account for a large share of child sexual abuse that is reported, and Mr. Deckinga's stated fantasies were about family members ([Source 6]).

- **Volume.** Over 600 images under the Guidelines, qualifying for the five-level image count enhancement (Gov't Sent. Memo at 5).

**In short: the research literature that is sometimes cited by defense counsel to argue for shorter CSAM sentences — i.e., the low sexual-recidivism figures for "CSAM-only" offenders — describes a category of offender that Mr. Deckinga has, by his own admissions and the evidence on his devices, placed himself outside of.**

## Federal Sentencing Statistics (U.S. Sentencing Commission)

### Current Sentencing Landscape, FY 2024

- 1,375 individuals were sentenced for federal child pornography offenses in FY 2024 — a 34.4% increase since FY 2020. [Source 1]

- Offense mix: 45.8% possession, 43.1% trafficking/distribution, 11.1% receipt. [Source 1]

- The average sentence for trafficking (distribution) of CSAM in FY 2024 was 151 months (12.6 years). [Source 1] The government's request here — 228 months — is above the national average because the aggravating facts are above the national average: five years of conduct, ten accounts, infants/toddlers, sadistic material, solicitation, and expressed interest in identified nieces.

- Statutory range for Mr. Deckinga's offense of conviction (18 U.S.C. § 2252A(a)(2) and (b)(1)): five-year mandatory minimum, 20-year (240-month) statutory maximum (Gov't Sent. Memo at 2).

- Mr. Deckinga's total offense level under the Sentencing Guidelines is 37, which — at Criminal History Category I — produces an advisory range that overlaps the statutory maximum (Gov't Sent. Memo at 4–5). The 228-month recommendation is not above the Guidelines.

### Low criminal-history category is typical, not mitigating

The USSC's 2021 report on non-production CSAM offenses found that 75.9% of non-production CSAM offenders fell in Criminal History Category I (the lowest), and 69.1% had zero criminal history points, compared to roughly a third of all other federal offenders. [Source 2] The government's memorandum expressly acknowledges this (Gov't Sent. Memo at 7). In other words, Mr. Deckinga's lack of a prior record is the norm for this offense category, not a reason to depart downward.

## Recidivism Evidence

### What the published recidivism numbers actually say

The research on CSAM recidivism is nuanced. A fair reading of the evidence supports — rather than undermines — a maximum sentence for a mixed-profile offender like Mr. Deckinga:

- A U.S. Sentencing Commission follow-up study of non-production CSAM offenders found an overall three-year recidivism rate of 27.6%, with a sexual recidivism rate of 4.3%. [Source 3] Over a five-year window, published studies report roughly 29% general recidivism and 11% new sexual offenses, with 3% new contact offenses against a child and 9% new CSAM offenses. [Source 3]

- Seto, Hanson, and Babchishin's 2011 meta-analysis found that approximately 1 in 8 online offenders (12%) already had a known contact sexual offense at the time of the online-offense investigation — meaning hands-on offending was already documented. [Source 4]

- An FBI analysis of federal online child-exploitation cases found that 38% of cases involved crossover offending — offenders who possessed CSAM and also attempted or committed other sexual exploitation crimes. [Source 4]

- Smith (2020), reviewing federal possession cases in the northeastern U.S., found that nearly 55% of offenders disclosed a contact sexual offense against a minor and nearly 40% admitted having two or more victims. [Source 4]

- The earlier "Butner Study" (Bourke & Hernandez, 2009) reported that 85% of federal CSAM offenders in an intensive treatment program eventually disclosed prior hands-on offenses not reflected in their criminal records. [Source 7] Courts and researchers note methodological criticisms of the Butner figure, but the study remains an influential data point cited by federal prosecutors, and its core finding — that CSAM offenders' known records understate their hands-on offending — is reinforced by the more recent Smith and FBI analyses above.

### The CPORT risk factors for sexual reoffense

The Child Pornography Offender Risk Tool (CPORT), validated for predicting sexual reoffense over a five-year follow-up, scores offenders on seven factors. [Source 5] Factors the government's evidence indicates are present for Mr. Deckinga include:

- Indication (admission) of sexual interest in children — his own recorded chats demonstrate this plainly.

- Repeated, sustained offending (five years, ten accounts) consistent with entrenched sexual interest rather than situational curiosity.

The 7th Circuit itself has recognized the logic: "The more difficult it is for a person to resist a desire for sexual contact with children, the more likely he is to recidivate, and this is an argument for a longer prison sentence. And on grounds of deterrence as well as incapacitation, for the stronger the impulse to commit a criminal act, the greater must be the threat of punishment in order to deter it." *United States v. Beier, 490 F.3d 572, 574 (7th Cir. 2007)* (quoted at Gov't Sent. Memo at 8).

## Evidence on Rehabilitation

Community-safety letters are frequently met with the argument that treatment, not prison, is the answer. The published evidence on sex-offender treatment effectiveness is modest, mixed, and — critically — does not justify shortening the period of incapacitation for an offender whose own expert has said he cannot safely be around children or the internet.

- Meta-meta-analyses estimate that treatment reduces sexual recidivism by roughly one-third relative to untreated controls, with the largest effects in community settings and among juvenile populations. [Source 8]

- A 2013 Cochrane-style systematic review (Långström et al.) concluded there was insufficient evidence to draw firm conclusions about the benefits or risks of psychological treatment or pharmacotherapy for adults who have sexually abused children. [Source 8]

- Prison-based treatment has shown smaller, sometimes non-significant, and in some studies even negative, effects compared to community-based treatment. [Source 8] This cuts against the notion that a shorter sentence plus in-prison treatment is a safer disposition than a longer sentence.

  *"Throughout his treatment, Mr. Deckinga should not have access to the internet or be left unsupervised with children or adolescents." — Mr. Deckinga's own retained expert (DE 38, p. 20, quoted in Gov't Sent. Memo at 1, 9)*

A defense expert's acknowledgment that his client cannot safely be around children or the internet is, functionally, an acknowledgment that incapacitation is the only reliable safeguard. Only a long custodial

sentence produces the one intervention everyone — government, defense expert, and public — agrees on: keeping him away from children.

## Documented Cases of Reoffense After Release

The following documented cases illustrate the risk that materializes when sex offenders with backgrounds involving children are released, paroled, or supervised in the community. They are not outliers cherry-picked from a century of records; several are from the last few years.

### Phillip Garrido — kidnapping and 18-year captivity of Jaycee Dugard

Garrido received a 50-years-to-life federal sentence in 1977 for the kidnapping and rape of Katie Callaway. He was paroled after serving only 11 years. In 1991 he kidnapped 11-year-old Jaycee Dugard and held her captive for 18 years, during which she was repeatedly raped and gave birth to two children fathered by Garrido. A California Inspector General report later concluded that state parole supervision of Garrido had failed. [Source 9]

### John Couey — murder of Jessica Lunsford

Couey was a convicted child sex offender with an extensive record of prior offenses against children. Under the sentencing and monitoring laws in place at the time, he had served only short sentences and was not subject to meaningful post-release tracking. In February 2005 he abducted 9-year-old Jessica Lunsford from her Florida home, raped her, and buried her alive. His case prompted Jessica's Law, adopted in 42 states. [Source 10]

### Kenneth Dean Lee — Colorado, reoffended against 7-year-old on parole

Lee had been sentenced in 2014 to 23-to-life for sexual assaults on children. After being paroled, he was arrested in Aurora, Colorado for sexually assaulting a 7-year-old girl. The vice chair of the Colorado Parole Board publicly called the situation "gut-wrenching." [Source 11]

### Thomas Edward Gailus — Oklahoma, 2025

Gailus, 52, had a 2005 Washington State conviction for possession of child pornography. A 2023 search of his Oklahoma home found him again in possession of CSAM — including images with the same series title as the material for which he was convicted 18 years earlier — accessed via the dark web. He was federally prosecuted in 2025. [Source 12]

### Portland, Oregon — distribution of CSAM while on federal supervised release

In 2024 a Portland man was federally sentenced to 21 years after investigators found he had been distributing CSAM from his residence and sharing it with another registered sex offender — all while on federal supervised release from a 2008 conviction for distribution of CSAM. The supervised release conditions did not prevent reoffense; only re-incarceration did. [Source 13]

### Aloha, Oregon — 2026

A man from Aloha, Oregon was sentenced to 10 years in federal prison after being found accessing CSAM while on probation for a 2023 state sex-abuse conviction. Source 13

**The common thread across these cases is not "bad luck." It is the predictable consequence of releasing offenders — whether through parole, early release, or simply the expiration of a too-short sentence — before their sexual interest in children has been contained for long enough to make access the controlling constraint. For Mr. Deckinga, who his own expert says cannot safely be around children or the internet, that constraint is custody.**

## The Ongoing Harm to Victims

Mr. Deckinga distributed more than 600 images depicting the sexual abuse of real, identified children. The court has received 11 separate victim impact statements and seven restitution requests totaling $47,000 (Gov't Sent. Memo at 9–10). These are not abstract numbers; they are children whose abuse Mr. Deckinga helped spread, and whose trauma he extended every time he distributed their images.

- Federal courts have characterized CSAM victims as suffering harm like "a thousand cuts": once the images are on the internet, they remain there forever, and victims are re-victimized every time they are viewed, shared, or traded. Source 14

- Youth are traumatized not only by the original production but by the perpetual redistribution of their images and the knowledge they cannot control. Source 14

- The Supreme Court: "[C]hild pornography harms and debases the most defenseless of our citizens." *United States v. Williams, 553 U.S. 285, 307 (2008)* (quoted in Gov't Sent. Memo at 8).

Distribution — the specific conduct to which Mr. Deckinga pleaded guilty — is what creates the "forever" harm. Every image he sent became another copy that will resurface, be traded, and re-victimize the child depicted. A sentence at or near the statutory maximum is not excessive; it is a proportional response to conduct that, by design, extends harm indefinitely.

## Deterrence and Seventh Circuit Guidance

Congress, the Supreme Court, and the Seventh Circuit have repeatedly affirmed that general deterrence is a central justification for lengthy sentences in CSAM cases.

- "[C]rimes such as [this] are serious offenses deserving serious sanctions." *United States v. Grigg, 442 F.3d 560, 564–65 (7th Cir. 2006)* (cited in Gov't Sent. Memo at 5).

- "The greater concern under the Guidelines is for the welfare of these exploited children." *United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006)* (cited in Gov't Sent. Memo at 8).

- "The more difficult it is for a person to resist a desire for sexual contact with children, the more likely he is to recidivate, and this is an argument for a longer prison sentence." *United States v. Beier, 490 F.3d 572, 574 (7th Cir. 2007)* (cited in Gov't Sent. Memo at 8).

### On the seriousness and permanence of the harm

*"Child pornography harms and debases the most defenseless of our citizens." — United States v. Williams, 553 U.S. 285, 307 (2008)*

*"Victims of child pornography are re-victimized every time their images are viewed, traded, or distributed — a harm the courts have described as "like a thousand cuts."" — National Center for Victims of Crime*

### On deterrence and incapacitation

*"The more difficult it is for a person to resist a desire for sexual contact with children, the more likely he is to recidivate, and this is an argument for a longer prison sentence." — United States v. Beier, 490 F.3d 572, 574 (7th Cir. 2007)*

*"Crimes such as these are serious offenses deserving serious sanctions." — United States v. Grigg, 442 F.3d 560, 564–65 (7th Cir. 2006)*

### On the limits of treatment

*"Throughout his treatment, Mr. Deckinga should not have access to the internet or be left unsupervised with children or adolescents." — Defendant's own retained expert (DE 38, p. 20)*

*"Insufficient evidence to draw conclusions regarding the benefits and risks of psychological treatments or pharmacotherapy when used specifically with adults who sexually abuse children." — Långström et al. systematic review (2013)*

### On crossover from online to contact offending

*"Approximately one in eight online offenders has a known contact sexual offense at the time of their index offense." — Seto, Hanson & Babchishin meta-analysis (2011)*

*"Thirty-eight percent of FBI-analyzed online child sexual exploitation cases involved crossover offending — offenders who possessed CSAM and also attempted or committed other exploitation crimes." — FBI crossover analysis, cited in Faust et al.*

## Bottom Line for the Court

A sentence of 228 months (19 years) followed by 20 years of supervised release is *below* the 20-year statutory maximum, *above* the national average for CSAM distribution because the aggravating facts are

above average, and *consistent with* the advisory Guidelines range produced by an offense level of 37 at Criminal History Category I.

**The only safeguard that every party in this case agrees on — the government, the community, and even Mr. Deckinga's own expert — is that Mr. Deckinga not have unsupervised access to children or the internet. Incapacitation is what makes that safeguard real. A sentence near the statutory maximum is the only outcome that honors the seriousness of his five years of conduct, the permanence of the harm to the 11 identified victims and every other child depicted in the 600+ images he distributed, and this Court's duty under 18 U.S.C. § 3553(a) to protect the public.**

## Sources

All sources were accessed in April 2026. Government memorandum citations refer to the Government's Sentencing Memorandum in *United States v. Deckinga*, 2:25-CR-85 (N.D. Ind.), Doc. 43, filed April 17, 2026.

1. U.S. Sentencing Commission, *Quick Facts: Child Pornography Offenses, Fiscal Year 2024*. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Child_Pornography_FY24.pdf.

2. U.S. Sentencing Commission, *Federal Sentencing of Child Pornography: Non-Production Offenses* (2021), at 18. https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.

3. U.S. Sentencing Commission, *Recidivism of Federal Non-Production Child Pornography Offenders*; see also Faust, Renaud, Bickart, Camp, *Child Pornography Possessors and Child Contact Sex Offenders*, Sexual Abuse (2015). https://www.ussc.gov/sites/default/files/pdf/research-and-publications/backgrounders/rg_child-pornography-non-production.pdf.

4. Seto, Hanson & Babchishin, *Contact Sexual Offending by Men With Online Sexual Offenses*, Sexual Abuse 23(1): 124–45 (2011); FBI analysis summarized in Faust et al. and in SMART Office, Chapter 4: Internet-Facilitated Sexual Offending. https://smart.ojp.gov/somapi/chapter-4-internet-facilitated-sexual-offending. Smith (2020) federal possession case analysis.

5. Seto & Eke, *Predicting Recidivism Among Adult Male Child Pornography Offenders: Development of the Child Pornography Offender Risk Tool (CPORT)*, Law and Human Behavior 39(4): 416–29 (2015); Eke, Helmus & Seto, *A Validation Study of the CPORT*, Sexual Abuse 31(4): 456–75 (2019). https://pubmed.ncbi.nlm.nih.gov/25844514/.

6. Hanson & Morton-Bourgon, *Age and Sexual Recidivism: A Comparison of Rapists and Child Molesters*, Public Safety Canada; see also meta-analyses on intrafamilial vs. extrafamilial offender recidivism. https://www.publicsafety.gc.ca/cnt/rsrcs/pblctns/sxl-rcdvsm-cmprsn/index-en.aspx.

7. Bourke & Hernandez, *The "Butner Study" Redux: A Report of the Incidence of Hands-on Child Victimization by Child Pornography Offenders*, Journal of Family Violence 24: 183–91 (2009). https://link.springer.com/article/10.1007/s10896-008-9219-y. Note: The Butner findings have been critiqued on methodological grounds (reliance on self-disclosure in treatment, polygraph evidence). The more recent Smith (2020) and FBI analyses (Source 4) reach similar qualitative conclusions through independent data.

8. Schmucker & Lösel, *Sexual offender treatment for reducing recidivism among convicted sex offenders: a systematic review and meta-analysis*, Campbell Systematic Reviews (2017); Hanson et al. (2002); Långström et al. (2013); SMART Office Chapter 7. https://onlinelibrary.wiley.com/doi/full/10.4073/csr.2017.8.

9. California Office of the Inspector General report on parole supervision of Phillip Garrido; ABC News, *Phillip Garrido's Early Parole Termination*. https://abcnews.go.com/Primetime/meet-senior-federal-probation-officer-confirmed-early-termination/story?id=13972627.

10. *Murder of Jessica Lunsford*; Jessica's Law (2005). https://en.wikipedia.org/wiki/Murder_of_Jessica_Lunsford.

11. KDVR News, *Why was a serial child sex offender released years early? Parole board responds*. https://kdvr.com/news/local/kenneth-lee-child-sex-assault-parole-board/.

12. U.S. Department of Justice, *Repeat Offender Sentenced to 10 Years for Possession of Child Sexual Abuse Material* (2025). https://www.justice.gov/opa/pr/repeat-offender-sentenced-10-years-possession-child-sexual-abuse-material.

13. U.S. Attorney's Office for the District of Oregon, *Recidivist Sex Offender Sentenced to 21 Years in Federal Prison for Distribution of Child Pornography and Theft of Government Property*. https://www.justice.gov/usao-or/pr/recidivist-sex-offender-sentenced-21-years-federal-prison-distribution-child-pornography. See also KDRV News on the Aloha, Oregon case.

14. National Center for Victims of Crime, *Improving the Response to Victims of Child Pornography*. https://victimsofcrime.org/wp-content/uploads/2026/01/improving-response-to-vcp_full-report.pdf. See also Innocent Lives Foundation, *The Lasting Effects of Child Pornography*. https://www.innocentlivesfoundation.org/the-lasting-effects-of-child-pornography/.

15. Government's Sentencing Memorandum, *United States v. Deckinga*, 2:25-CR-85 (N.D. Ind., Hammond Div.), Doc. 43, filed April 17, 2026.

---

**A note on intellectual honesty:** A letter is more persuasive when it acknowledges the strongest counter-argument and answers it. The strongest defense argument is that CSAM-only offenders, in isolation, show modest sexual-reoffense rates in controlled studies. The factual answer — grounded in the government's own record in this case — is that Mr. Deckinga is not a CSAM-only offender in the research sense: his distribution, his solicitation of production from minors, his expressed sexual interest in his identified nieces, and his own expert's concession all place him in the higher-risk mixed/dual category. The research, taken as a whole, supports the government's 228-month recommendation.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA
                V                                        No, 2:25-CR-85
MICHAEL DECKINGA


In regard to the above captioned matter, set for sentencing on, April 27, 2026.  After reading the sentencing motion moving forward, I, feel compelled to address this matter as a member of MICHAEL DECKINGA'S, subdivision.

Personally, I have not met MICHAEL DECKINGA, only seeing him moving his camper in and out of his driveway from time to time.  However, I have engaged his young daughters when approached by the girls to shovel my driveway, along with their female cousin. The girls did shovel me out and I served them hot chocolate in my garage and chatted with them for about an hour.  Beautiful kids, that should be protected at all costs.

I, had explained to the girls my family also had 7 children and I often see them playing outside and it would remind me of my own childhood with so many children and the memories it brought back to me....minus  the fact that our dad never was arrested in the home and the family humiliated by his disgusting actions.

I, also mentioned to the girls that my own daughter, lived directly across the street from them as there was an empty lot between the houses and we could watch them playing with our naked eye.  With that said, it disgusts me to think that while, my daughter, my granddaughter, myself, my daughters friends and family could also been seen by MICHAEL DECKINGA and his sick mind.

My issue is, this mans children and the children exposed to him thru the Church could be at risk of his perversions and the recidivism involved regarding child predators.  It's shocking to think that this man could have several letters of his amazing character in the courts hands already.  As far as myself, my daughter and my son, all which have homes in Emerald Crossing Subdivision, we would ask that he not be returned to his family's home anytime in the future at all.  We also ask that his sentencing be set at the maximum to keep him away from any computers, phones or electronics to keep him from engaging in his criminal behaviors.



Margaret Gottschammer

**The Honorable Philip P Simon**
5400 Federal Plaza
Suite 4400
Hammond, IN 46320


Dear Judge Simon,


I am writing to you regarding the upcoming sentencing of Michael Deckinga in case number 2:25-CR-85. I respectfully request that you consider imposing the maximum sentence allowable under the law.


The actions of Mr.Deckinga have caused significant harm, not only to vulnerable children, but also to the broader community. The severity of the offense, the lasting emotional and physical impact on those affected, and the need for justice and deterrence all weigh heavily in favor of the strongest possible sentence.


A maximum sentence would send a clear message that such conduct will not be tolerated and would help protect others from potential future harm. It would also provide a measure of closure and reassurance to those who have suffered as a result of this crime.


I appreciate the difficult responsibility you carry in making this decision and trust that you will weigh all factors carefully. Thank you for your time, attention, and dedication to upholding justice.


Respectfully,

Richard and Irene Montalvo

Concerned resident of Emerald Crossing Dyer, In.

4/21/2026

I am writing on behalf of my family as a concerned resident of this community. We were deeply disturbed to learn that an individual admitted to committing serious offenses involving the exploitation of children has been living in our subdivision.

As parents, our foremost responsibility is to protect our children and provide them with a safe environment to grow, play, and thrive. Knowing that someone with a history of distributing child pornography resides nearby has caused significant fear, anxiety, and discomfort for our family. Everyday activities that should feel routine—playing in neighborhood parks, spending time in our own backyard, swimming in local pools, riding bikes, or walking to a neighbor's home—now come with an added sense of unease.

This situation has not only impacted our sense of security, but also the trust we place in our surroundings. Spaces that should feel safe and joyful for children—parks, backyards, and community pools—no longer feel entirely secure. Instead, they have become places where we feel the need for constant vigilance.

We respectfully ask the Court to consider the full impact of these crimes—not only on the direct victims, but also on families like ours who are left feeling vulnerable in our own homes and neighborhoods. We believe a full sentence is appropriate in this case to ensure accountability and to help protect children in our community from further harm.

Thank you for your time and consideration.

Sincerely,

*Katie and David Clemons*
Concerned Emerald Crossing Resident

RE: Community Impact Statement – United States v. Micheal Deckinga

Your Honor,

My husband and I respectfully submit this statement as residents of Dyer and as parents of two young children, ages six and seven. We recently became aware of this case and are deeply concerned by the nature of the charges and Mr. Deckinga's guilty plea to these serious offenses. His involvement in church and youth-related activities while committing these crimes is particularly troubling and raises serious concerns about trust and the safety of children in our community.

We moved to Dyer in 2019 because we believed it to be a safe community in which to raise our children. Learning of crimes of this nature has shaken that sense of security. Dyer is home to many schools, parks, and youth activities, and the possibility of Mr. Deckinga returning to this environment raises significant concerns for the safety and well-being of local children and families.

Given the severity of the offenses, we respectfully ask the Court to consider imposing the maximum sentence permitted by law, or a sentence near the maximum. We also ask the Court and U.S. Probation to carefully consider the presence of minors in our community, the nature of the admitted conduct, and the need for strict supervision measures that prioritize the safety of children.

Thank you for your time and consideration.

Respectfully,

Carrolyn Bayze & Jaime Bayze

Ara Villalva
15025 W. 103rd Ave
Dyer, IN 46311

4/20/2026

United States District Court
Northern District of Indiana
Hammond Division

Re: Sentencing of Michael Deckinga

Dear Honorable Judge,

I am writing this letter as a concerned resident of the subdivision where the defendant lived and where he will be returning should he be released. I respectfully ask the Court to consider imposing the maximum sentence permitted under the law following his conviction for offenses involving child sexual abuse material and its distribution.

Our subdivision is a place where families feel secure and children can safely play outside. It is very common to see young kids playing outside, riding bikes, walking to friends' homes, and enjoying the sense of safety that this community provides. The nature of these crimes strikes at the heart of that safety. It is deeply unsettling to know that someone capable of such actions lived among us, in proximity to so many children.

What makes this situation even more troubling is the way the defendant appeared to present himself. He seemed to rely on his big family and religious background to project an image of trustworthiness and moral character. This perceived image has made it easier for those around him to believe he no longer poses a threat and I don't believe this to be true. In light of his conviction, that contrast raises serious concerns about deception and the potential risks he may have posed while living in our community.

This case is not only about punishment, but also about protecting children, safeguarding neighborhoods like ours, and reinforcing the seriousness of crimes that exploit and harm the most vulnerable. A strong sentence would send a clear message about the gravity of these offenses and help restore a sense of security for families who now feel shaken.

Thank you for taking the time to consider the perspective of those affected beyond the immediate case. I trust the Court will weigh all factors carefully in determining an appropriate sentence.

Respectfully,

Arantxa Villalva

I am a parent and resident of the Emerald Crossing subdivision and I am writing to express my concern regarding the placement of an individual with a conviction related to child pornography within our neighborhood.

Emerald Crossing is home to many families with young children as well as children on the spectrum like my son. Our subdivision includes a neighborhood park, designated school bus stops where elementary and middle school children gather daily- my parents are also the bus drivers for Emerald Crossing. In addition, Providence Christian Academy is located in very close proximity to our community, Caravel Autism Health is connected to our subdivision and serves children with developmental delays, including nonverbal children with heightened levels of vulnerability, and Empowered Minds Daycare is also located less than a mile away.

Also, it is my understanding that sex offenders have residency restrictions. These individuals convicted of sex offenses, often limiting their proximity to schools, parks, and daycare centers. Emerald Crossing appears to include or be immediately adjacent to several such locations that I stated above.

Given these factors, the presence of Mr. Deckinga with this type of offense raises significant concerns among residents regarding child safety, supervision, and the overall sense of security within the neighborhood/community.

Thank you time and consideration,

Mr. and Mrs. Surdy

4/20/2026

**The Honorable Judge Philip P. Simon**

United States District Court

**Re: Community Impact Statement – Michael Deckinga**

To the Honorable Judge Philip P. Simon,

As a parent and member of this community, I am deeply disturbed by the harm caused by crimes involving Child Sexual Abuse Material (CSAM). These are not victimless offenses — each image is the ongoing abuse of a real child, and every viewing prolongs their suffering. Many of the victims Michael Deckinga viewed were at the most tender ages, much like most children in our neighborhood.

Knowing such crimes occurred here forces parents like me to question the safety of our children, including my own, and destroys the trust that binds our neighborhood together, especially when committed by someone who is supposed to be a man of God and considered among the most trustworthy. A man — or any person — should protect those weaker than themselves, not exploit them. To prey on the most vulnerable is a betrayal of our most basic human duty.

Our community within Emerald Crossing works hard to give children a safe place to grow. This crime shatters that safety and leaves lasting fear instead. I urge the Court to impose a strong and just sentence that reflects the seriousness of this offense and sends a clear message: we will protect our children, and we will not tolerate exploitation of any child.

Respectfully,


Christine Kowalik

April 21, 2026

The Honorable Judge Simon

United States District Court Northern District of Indiana

Re: United States v. Michael Deckinga- Case No. 2:25-CR-85

The Honorable Judge Simon and the Court:

I am writing on behalf of my wife, children and many of our neighbors. We reside in the same community and neighborhood as Michael Deckinga; a neighborhood filled with young families and more than 50 children who live on our block alone. We respectfully ask the Court to give serious weight to our perspective as you deliberate on an appropriate sentence in this case.

We want to be clear at the outset: my wife and I are Christians who wholeheartedly believe in repentance, forgiveness, and the possibility of genuine spiritual reconciliation. We do not write this letter with hatred or vindictiveness toward Mr. Deckinga or his family. We believe that the grace extended through Jesus Christ is available to all people, including those who have committed deeply serious offenses. If Michael Deckinga has truly come before God and his community in genuine repentance, that is a matter of real spiritual significance, and we do not dismiss it.

However, we write with equal conviction that forgiveness and public safety are not in conflict and that the Court's sentence in this matter carries profound implications for the children and families in this neighborhood. We are aware that the defense is requesting a sentence near the minimum, while the prosecution has recommended 228 months in accordance with the federal sentencing guidelines for crimes involving child sexual abuse material. Given the nature of the offenses, the multiple sentencing enhancements Mr. Deckinga has incurred, and the documented details of his conduct, we respectfully urge the Court to follow the prosecutorial recommendation and apply the guidelines as intended.

We understand that the Court has received dozens of character letters on Mr. Deckinga's behalf, many speaking to his reputation in the community and church prior to his arrest. We do not seek to erase those relationships or deny that he has people who care for him. But we must respectfully note that character letters, however sincere, speak to a life lived during and before these crimes came to light and cannot speak to the risk that releasing him earlier than recommended would pose to the children who live nearby and throughout his own community.

We are also aware that Mr. Deckinga's wife has expressed her intention to welcome him back into the family home upon his release. While we deeply respect and love the Deckinga family and are sensitive to the difficult circumstances they are navigating, this reality underscores, rather than alleviates, our concern. Returning Mr. Deckinga to a home surrounded by children, his own and those of dozens of neighboring families, before he has completed the full course of rehabilitation, supervision, and accountability that a longer sentence affords would place an unreasonable burden on the community to simply trust that all will be well.

We would offer this analogy with the greatest of respect: asking our neighborhood to welcome Mr. Deckinga back prematurely is not unlike placing a case of beer in front of a person in early recovery from alcoholism, walking away, and simply hoping for the best. Genuine recovery, the kind that protects both the individual and those around them, requires time, structure, distance from temptation, and proven accountability. The sentencing guidelines exist precisely because lawmakers and experts understand this. We believe the Court should honor both the spirit and the letter of those guidelines.

We are not asking for cruelty. We are asking for wisdom. We are asking the Court to recognize that a sentence in line with prosecutorial guidelines is not inconsistent with the possibility of Michael Deckinga's redemption. In fact, it may be the most responsible path towards it. Accountability and consequence are not the enemies of rehabilitation; they are often its foundation.

On behalf of our family and the many neighbors who share these concerns; parents of children who play on these streets, ride bikes in these driveways, and deserve to grow up in safety, we respectfully implore this Court to impose a sentence consistent with the federal guidelines as recommended by the prosecution.

Thank you, Your Honor, for your time and careful consideration of this matter.

Respectfully submitted,

Concerned Neighbor and Community Member

Honorable Judge Simon

I am writing you to express concerns with safety in my family's neighborhood amid the knowledge that Michael Deckinga may be allowed to return to our neighborhood, Emerald Crossing. My husband and I have lived here for 12 years and have two young daughters. We have felt that this neighborhood is safe enough to let our kids ride bikes, scooters and explore with their friends within reason; however, if Mr. Deckinga is allowed to return to this neighborhood, those feelings of safety will be eliminated. This neighborhood is filled with children of all ages who are often outside playing like kids should be playing. Please consider the safety and well-being of these children and take appropriate action to keep Mr. Deckinga away from the most vulnerable of our society. Thank you for your time and consideration.

Sincerely,

Jon and Danielle Moyado

Hello,

I am writing to express my strong opposition to the early release of Michael Deckinga and to urge that he serve the maximum sentence for his crime.

While I understand that rehabilitation is an important part of the justice system, offenses involving the sexual abuse of children are profoundly serious and cause lasting harm, not only to victims, but to families and the broader community. This is not a situation where leniency based on "good character" is appropriate. The nature of this crime demonstrates a level of deception and risk that cannot be ignored.

Our subdivision is home to many young children. Allowing Mr. Deckinga to return to this neighborhood would place families in a constant state of fear and vigilance, fundamentally changing how parents allow their children to play, interact, and feel safe in their own community. Even with treatment or supervision, his presence represents an ongoing risk that is unacceptable.

I respectfully ask that the concerns of our community be given serious consideration. The safety, well-being, and peace of mind of children and families must take precedence. Early release would have a lasting negative impact on our neighborhood and on the sense of security every parent deserves.

Thank you for taking the voices of affected community members into account in your decision.

Sincerely,

Ashley Hospes
Emerald Crossing

To Whom It May Concern,

I am writing to address the recent sentencing of Michael Deckinga and the profound impact this situation has had on my family and our entire neighborhood.

When my husband and I moved into this community, we were excited to begin building our lives and, eventually, to raise children in what we believed would be a safe and welcoming environment. Over time, we were encouraged to see so many young families and small children in the area, which gave us comfort knowing our own children would grow up surrounded by friends and a supportive community.

However, learning of the circumstances surrounding Michael Deckinga over the past year has deeply shaken that sense of safety. As parents of two-year-old children, it is incredibly difficult to process how someone could make choices that put children at risk. Children depend on adults for protection, care, and guidance, and any violation of that trust is pure evil.

This situation has not only caused fear and concern within my own family, but it has also affected the broader sense of security throughout our neighborhood. It raises serious concerns about the well-being of our children and the measures necessary to ensure their safety moving forward.

I strongly believe that protecting children must remain a top priority. If someone themselves knows it's a problem they would have seek help but instead continued until they got caught. Someone like that doesn't care to stop so getting the full sentencing is a way to fully understand why you're in the place you are. He took the route to act on his thoughts instead of looking at his family and seek help. I speak for everyone in my community when I say we must protect our children and no one gets to decide to ruin their lives before they even start.  Situations like this highlight the importance of accountability, appropriate consequences, and continued efforts to safeguard those who are most vulnerable. It is essential that actions taken in response to such cases reflect the seriousness of the harm and the need to prevent anything like this from happening again.

I am sharing these thoughts not only as a parent, but as a concerned member of this community who wants to ensure that our neighborhood remains a safe place for all families and children.


Thank you.

To Whom It May Concern,

I am writing as a deeply concerned resident of this community regarding Michael Deckinga, who resides in the neighborhood and has been charged with and pleaded guilty to serious offenses involving the distribution of child pornography. The nature of these charges is deeply troubling, particularly given the presence of many families and young children in this area. As a parent and member of this community, I am particularly concerned about the safety of the many children who live here, and how a shorter sentence may affect their well-being and the overall sense of security in our neighborhood. I respectfully ask that all decisions regarding sentencing, release, and potential residency restrictions be made with the utmost consideration for community safety. Measures such as thorough supervision, strict monitoring, and appropriate distance from areas where children gather are critically important. This situation has caused considerable distress among residents, especially those with young children. I urge careful evaluation of the potential impact on the community and the importance of prioritizing the protection of vulnerable individuals.

Thank you for your time and attention to this matter.

Sincerely,
Samantha Gill
Resident of Emerald Crossing

Dear Honorable Judge Philip P Simon,

My name is Jonathan Laud, and I am a resident of Dyer, Indiana and live in the same community as the defendant and want to share how this situation is affecting our community, especially when it comes to children's safety.

This situation has created worry in our community. Our neighborhood is full of children who are outside regularly. When you think about what happened it is hard not to worry about the children's safety and in the future if the defendant comes back to our community.

People who live here or want to live here should not have to wonder if their neighborhood is a place for their children to grow up and play. Just the thought of something happening creates anxiety among the community and is enough to change how people perceive the neighborhood.

This situation has also made us question who we can trust in our community. We want to be able to trust the people who live near us. This is especially important for the many parents in our community who moved here for the sense of safety

I am asking the court to seriously consider the safety of the children in the community when making its decision.

Respectfully,

Jonathan Laud

To the Honorable Court,

My name is Emily Coxon, and I am a resident of the neighborhood where the defendant lived. I am writing to express my deep concern regarding this case and to respectfully ask the Court to consider the full impact of this offense when determining sentencing.

As a parent of 2 girls, and community member, learning of this conviction has been deeply unsettling. Our neighborhood is filled with families and young children, and this situation has affected our sense of safety and trust within our community. While I understand that sentencing decisions must be based on the law and the facts of the case, I hope the Court will consider the broader impact these crimes have—not only on victims, but on the community as a whole.

Crimes involving the exploitation of children are particularly serious and have lasting consequences. I respectfully ask that the Court impose a sentence that reflects the severity of the offense and prioritizes the protection of children and the safety of the community.

Thank you for your time and consideration.

Sincerely,

Emily Coxon

April 21st, 2026

To the Honorable Court,

We have proudly called the Emerald Crossing Subdivision our home for almost a decade, and we write today to voice our strong concern regarding the potential release and residential placement of the defendant, Michael Deckinga. We respectfully advocate for continued incarceration and the imposition of strict residency restrictions in light of the nature of his conviction. The distribution of child pornography is an offense that causes profound and lasting harm. It is not a passive or indirect crime. Each file shared represents the abuse of a child and contributes to the continued exploitation of victims. Those who engage in this conduct play an active role in sustaining that harm.

Our neighborhood is a family-centered community, with a significant population of children. The immediate area includes schools, parks, and a daycare facility, all of which are frequented daily by minors. On the defendant's block alone, there are over 45 children, most of whom are under the age of twelve. Introducing an individual convicted of such an offense back into this environment raises serious safety concerns.

The residents of this community deserve to feel safe in their homes and in the spaces where their children learn and play. Allowing the defendant to return to this setting would undermine that sense of security and place an undue burden on families. We recognize the gravity of sentencing decisions and the responsibility entrusted to the Court. Protecting the public, especially children, must remain paramount. For this reason, we respectfully urge the Court to adopt the recommendations of the Prosecutor's Office and enforce the strictest appropriate conditions regarding the defendant's incarceration and residency.

Respectfully,

Jillian Veronie

Date 4/21/2026

Your Honor,

I have been a resident of Indiana for 5 years now and have known friends and family living in this area for 10 plus years now. I am writing this letter in strong support of continued incarceration and strict residency restrictions for the defendant, Michael Deckinga, based on the seriousness of his crimes; Distribution of Child Pornography.  This is not a victimless crime, I unfortunately know this first hand as someone who suffered at the hands of a pedophile, this is not a victimless crime those children suffer life long trauma. No citizen should have to fear their children being outside, at church or in school or anywhere for that matter knowing that someone who did this disgusting act lives among them. Like any time of crime this is a gateway to much more serious events it would not be long before he physically harmed a minor and anyone who is willing to take advantage of any minority and helpless group has no right being free to perform this type of behaviors. This is a family area, a community that gets along and looks out for each other. Putting him back into the community would put someone people at risk as the families that live around there, the schools, the churches, playgrounds etc are all nearby. Multiple studies have shown the recidivism rate of convicted sex offenders being 10-14% in the first five years and growing into the 25% range at 9 years, as someone residing in the area this is not a chance I or many people I know are willing to take.

It is your responsible as a judge who has been voted in by these same residents writing these letters to keep our streets and more importantly our children safe, this is a bigger picture than any of us know. This is a large group of horrible people behind these acts but doing the right thing and punishing them to the full extent of the law is your job. I beg of you to take all this in to consideration and to stop and take a moment to think if this was happening in your neighborhood or to your family how you would want this to be handled by the law.

Respectfully,

Richard Sichelski (Ex Probation officer and current case manager)

My name is Amy Lovely, and I am a resident of Emerald Crossing Subdivision in Dyer, Indiana. I am aware that the defendant has pleaded guilty to charges involving child pornography. This has been deeply unsettling for most of us who live here.

As a community, we value safety and trust, particularly when it comes to protecting children. This situation has created fear and concern among residents, especially parents, and has affected how secure we feel in our own neighborhood.

I respectfully ask the court to consider the impact on our community when determining sentencing, and to ensure that appropriate safeguards are in place to protect children and prevent future harm.

Thank you for your time and consideration,

Amy Lovely

The Honorable Philip P. Simon
United States District Court
Northern District of Indiana

Re: United States v. Michael Deckinga

Dear Judge Simon,

We are writing as residents of the neighborhood where Michael Deckinga resides. Our community is home to a large number of families, with dozens of children on individual blocks and hundreds more throughout the subdivision. A daycare and a school are located immediately adjacent to our neighborhood, making this an area where children are consistently present throughout the day.
As a community, we have always valued the sense of safety and trust that allows children to play outside, walk between homes, and interact freely with neighbors. The details of this case have significantly disrupted that sense of security.
What concerns us most is not only the nature of the offense, but the sustained and deliberate pattern of behavior described. This was not an isolated or momentary lapse—it involved repeated actions over time that directly contributed to the exploitation of children.
We are aware that letters submitted on behalf of Mr. Deckinga describe him as a trusted member of his family, church, and community. However, from our perspective, the contrast between those descriptions and the conduct in this case raises serious concerns. The behavior occurred while he was already part of a family-centered environment like ours, which makes reliance on those same factors as assurances of safety difficult to reconcile.
Our neighborhood is one where daily life is highly interconnected. Children are frequently outdoors and in shared spaces, often without constant direct supervision. In that context, the practical ability to ensure meaningful safeguards and prevent risk is uncertain.
This situation has had a tangible impact on our community. Families have become more cautious, routines have changed, and the sense of openness that once defined our neighborhood has been diminished.
We respectfully ask the Court to consider the collective impact on our community when determining an appropriate sentence. We also support the Government's recommended sentence as outlined in its filing.
Thank you for your time and consideration.

Respectfully,



Concerned Residents

To the Honorable Judge,

We are writing as members of the same broader Christian community as Michael, and as parents of children who attend the same school as his children. We have overlapping circles, shared environments, and a common investment in the well-being and safety of our community.

Like many others, we understand that Michael was previously viewed by some as a man of integrity. However, in light of the actions that have come to light, it is clear that this perception was not accurate. While we recognize that people can present themselves in ways that do not reflect their private behavior, this reality only increases our concern when considering future risk and accountability.

We want to be clear that we are not writing out of anger or a desire to condemn. As Christians, we believe deeply in the grace of God, and we pray that Michael experiences genuine repentance and restoration. At the same time, our faith does not remove the need for justice, wisdom, and protection of others. We also pray for the victims, both known and unknown, whose well-being must remain a central concern.

We respectfully urge the Court to carefully consider the implications of any sentence that would place Michael back into the general public without substantial safeguards. In practical terms, it is difficult to understand how someone in this situation could realistically avoid all unsupervised contact or situations of temptation. The risk is not theoretical, it is something that must be taken seriously for the sake of others.

We believe that true restoration is possible, but it does not require a reduced sentence to occur. Accountability and appropriate consequences can coexist with the opportunity for spiritual growth and change.

We trust the Court's judgment and thank you for your careful consideration of this matter.

Respectfully,
Concerned Members of the Community